**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

ELAINE WANG,                                          :
                                                      :
                    Plaintiff,                        :     Civil Action No. 1:21-cv-5845
                                                      :
v.                                                    :
                                                      :     **COMPLAINT FOR VIOLATIONS OF**
SOUTHWESTERN ENERGY COMPANY,                          :     **SECTIONS 14(a) AND 20(a) OF THE**
CATHERINE A. KEHR, JOHN D. GASS,                      :     **SECURITIES EXCHANGE ACT OF**
GREG D. KERLEY, JON A. MARSHALL,                      :     **1934**
PATRICK M. PREVOST, ANNE TAYLOR,                      :
DENIS J. WALSH III, S.P. "CHIP"                       :     **JURY TRIAL DEMANDED**
JOHNSON IV, and WILLIAM J. WAY                        :
                                                      :
                    Defendants.                       :
---------------------------------------------------------

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against Southwestern Energy, Inc.

("Southwestern Energy or the "Company") and the members Southwestern Energy board of

directors (the "Board" or the "Individual Defendants" and collectively with the Company, the

"Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of

1934 (the "Exchange Act"), in connection with the proposed acquisition of Indigo Natural

Resources LLC ("Indigo") by Southwestern Energy.

2.      Defendants have violated the above-referenced Sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on July 2, 2021 with the United States Securities and Exchange

Commission ("SEC") and disseminated to Company stockholders.  The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Ikon Acquisition Company, LLC ("Merger Sub"), a wholly owned subsidiary of Southwestern Energy, will merge with and into Indigo with Indigo surviving the merger and becoming a wholly owned subsidiary of Southwestern Energy (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") Indigo unitholders will receive $400 million in cash in the aggregate and 339,270,568 shares of Southwestern Energy common stock, with an aggregate market value of approximately $1.6 billion based on the trading price on May 28, 2021 (the "Merger Consideration").

3.      As discussed below, Defendants have asked Southwestern Energy stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Goldman Sachs & Co. LLC ("Goldman Sachs") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights and/or to recover damages resulting from Defendants' misconduct concerning the Proposed Transaction and the issuance of the Proxy Statement.

5.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Southwestern Energy stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the proxy solicitor and financial advisor of Southwestern Energy are headquartered in this District, and the Company's stock trades on the New York Stock Exchange, also headquartered in this District.

## PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of Southwestern Energy common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Catherine A. Kehr has served as a member of the Board since 2011 and is the Chairman of the Board.

11.     Individual Defendant John D. Gass has served as a member of the Board since 2012.

12.     Individual Defendant Greg D. Kerley has served as a member of the Board since 2010.

13.     Individual Defendant Jon A. Marshall has served as a member of the Board since 2017.

14.     Individual Defendant Patrick M. Prevost has served as a member of the Board since 2017.

15.     Individual Defendant Anne Taylor has served as a member of the Board since 2018.

16.     Individual Defendant Denis J. Walsh III has served as a member of the Board since 2019.

17.     Individual Defendant S.P. "Chip" Johnson IV has served as a member of the Board since 2020.

18.     Individual Defendant William J. Way has served as a member of the Board since 2016 and is the Company's President and Chief Executive Officer.

19.     Defendant Southwestern Energy is incorporated in Delaware and maintains its principal offices at 10000 Energy Drive, Spring, Texas 77389.  The Company's common stock trades on the New York Stock Exchange under the symbol "SWN."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.      **The Proposed Transaction**

22.      Southwestern Energy, an independent energy company, engages in the exploration, development, and production of natural gas, oil, and natural gas liquids (NGLs) in the United States. It operates through two segments: Exploration and Production, and Marketing. The Company focuses on the development of unconventional natural gas and oil reservoirs located in Pennsylvania, Ohio, and West Virginia. As of December 31, 2020, it had approximately 217,296 net acres in Northeast Appalachia; and approximately 571,922 net acres in Southwest Appalachia. The company's estimated proved natural gas, oil, and NGLs reserves comprise 11,990 billion cubic feet of natural gas equivalent (Bcfe); and 2,437 Bcfe of proved undeveloped reserves. It also engages in marketing and transportation of natural gas, oil, and NGLs. It serves energy companies, utilities, and industrial purchasers of natural gas. Southwestern Energy was incorporated in 1929 and is headquartered in Spring, Texas.

23.      On June 2, 2021, Southwestern Energy announced that they had entered into a proposed transaction:

> SPRING, Texas--(BUSINESS WIRE)-- Southwestern Energy Company (NYSE: SWN) (the "Company" or "Southwestern") today announced that it has entered into a definitive merger agreement with Haynesville producer Indigo Natural Resources, LLC ("Indigo") under which it will acquire Indigo for approximately $2.7 billion. The transaction is expected to close early in the fourth quarter of 2021, subject to customary closing conditions. Transaction highlights include:
>
> - Increases projected cumulative free cash flow to approximately $1.2 billion from 2021 to 2023;
> - Improves estimated 2022 free cash flow per share ~30% and cash flow per debt adjusted share ~15%;
> - Accelerates expected delivery of sustainable leverage ratio below 2.0x in 2021 and progressing to 1.7x in 2022;

- Expands 2022 estimated margins by 12% resulting from low cost access to premium markets in the growing Gulf Coast LNG corridor;
- Complements existing portfolio, increases high-return dry gas inventory with over 1,000 locations added; and
- Leverages operational expertise of integrating and developing operated, large-scale natural gas assets; increases net production to over 4 Bcfe per day, consisting of approximately 85% natural gas.

"Today we are proud to announce another accretive transaction that will benefit the Company's shareholders for years to come. This acquisition enhances Southwestern's position as a leading natural gas producer and aligns with our disciplined strategy to generate free cash flow, enhance our balance sheet, optimize performance and build scale. Indigo has done a terrific job building its business, and its balance sheet strength, low cost structure and high-quality acreage position in the core of the Haynesville play accelerates the delivery of our strategic goals," said Bill Way, Southwestern Energy President and Chief Executive Officer.

Way continued, "Our footprint now extends across the two premier natural gas basins in the country and includes top-tier dry gas and liquids rich inventory. The value of this high-quality inventory is further enhanced by our diverse transportation portfolio providing access to premium markets in the Gulf Coast and within Appalachia. Southwestern Energy's unique combination of a strong balance sheet, high-quality assets and resilient vertically integrated business is positioned to deliver long-term value creation."

 Indigo is one of the largest private US natural gas producers, with core dry gas assets across the stacked pay Haynesville and Bossier zones in northern Louisiana. Its high-margin assets are located in close proximity to the growing demand in the Gulf Coast LNG corridor. Indigo currently produces 1.0 Bcf per day net and expects to produce approximately 1.1 Bcf per day net upon closing.  As of March 31, 2021, and adjusted for the recent sale of its non-core Cotton Valley assets, Indigo had $631 million of net debt and a leverage ratio of 1.1 times.

**Outlook**

Southwestern Energy expects to invest at maintenance capital levels again in 2022, with activity across all of its operating areas. On the acquired acreage, the Company expects to run a 4 rig program in 2022, placing 30 to 40 wells to sales. With a maintenance capital program, the Company projects 14 years of economic inventory at current strip prices across its assets in Appalachia and Haynesville.

Preliminary 2022 estimates for certain key metrics of the newly combined enterprise are shown below. Estimates are based on $2.75 NYMEX and $58 WTI.

Synergies are expected to be approximately $20 million in G&A reductions with further operational and financial cost savings anticipated. There are opportunities for additional value creation by leveraging the Company's core competencies for large scale, operated natural gas development, including its vertically integrated business, reservoir and base decline optimization, and use of innovation and data analytics. The Company's increased scale provides the opportunity for credit upgrades and cost of capital reductions, which would deliver additional accretion to financial performance.

**Transaction and Timing**
The total consideration of $2.7 billion will be comprised of $400 million in cash, approximately $1.6 billion in SWN common stock and $700 million of assumed 5.375% senior notes due 2029.

The stock consideration consists of approximately 339 million shares of Southwestern Energy common stock, calculated utilizing the 30-day volume-weighted average price as of May 28, 2021, of $4.72. No Indigo shareholder will receive more than 10% of Southwestern Energy's pro forma outstanding shares in connection with this transaction.

The transaction was unanimously approved by each of Southwestern Energy's and Indigo's board of directors. The transaction is expected to close early in the fourth quarter of 2021, subject to regulatory approvals, customary closing conditions and the approval by Southwestern Energy's shareholders.

**Advisors**
Goldman Sachs & Co. LLC served as the exclusive financial advisor to Southwestern and Skadden, Arps, Slate, Meagher & Flom LLP serve as legal advisor. Credit Suisse Securities (USA) LLC served as the exclusive financial advisor to Indigo and Kirkland & Ellis LLP served as legal advisor.

\* \* \*

24.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Southwestern Energy's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**   **The Materially Incomplete and Misleading Proxy Statement**

25.   On July 2021, Southwestern Energy filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Southwestern Energy Financial Projections*

26.   The Proxy Statement fails to provide material information concerning financial projections by Southwestern Energy management and relied upon by Goldman Sachs in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company and Indigo which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone and pro forma valuation of the Company and Indigo. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Southwestern Energy management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the

company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.    For the projections for the Company on a stand-alone basis, on a pro forma basis, and projections regarding Indigo as prepared by Company management, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBITDA, Cash Flow From Operations, and Discretionary Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28.    When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29.    The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[1]

30.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Goldman Sachs's Financial Analysis*

31.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis for Indigo*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the range of discount rates ranging from 7.00% to 8.50%; (ii) Indigo's weighted average cost of capital; (iii) Indigo's estimated unlevered free cash flow on a standalone basis without taking into account the Synergies from April 1, 2021 to December 31, 2025; (iv) Indigo's weighted average cost of capital; (iii) Indigo's estimated unlevered free cash flow on a standalone basis taking into account the Synergies from April 1, 2021 to December 31, 2025 (v) the range of illustrative terminal values for Indigo as of December 31, 2025; (vi) the inputs and assumptions underlying the range of perpetuity growth rates from 0.50% to 1.50%; and (vii) the net debt of Indigo as of March 31, 2021.

32.     With respect to Goldman Sachs' *Selected Precedent Transactions Analysis* for the Company, the Proxy Statement fails to disclose: (i) the closing dates of each transaction; (ii) the consideration paid for each transaction.

33.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis for SWN*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the range of

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

discount rates ranging from 6.50% to 8.00%; (ii) the Company's weighted average cost of capital; (iii) the Company's estimated unlevered free cash flow on a standalone basis from April 1, 2021 to December 31, 2025; (iv) the Company's weighted average cost of capital; (v) the range of illustrative terminal values for the Company as of December 31, 2025; (vi) the inputs and assumptions underlying the range of perpetuity growth rates from 0.50% to 1.50%; (vii) the net debt of the Company as of March 31, 2021; (viii) the number of fully diluted outstanding shares of Company common stock as of March 31, 2021; (ix) estimates of the Company's pro forma weighted average cost of capital; (x) estimates of the unlevered free cash flow for the Company pro forma for the Proposed Transaction, including the Synergies, from April 1, 2021 to December 31, 2021; (xi) the pro forma net debt of the Company as of March 31, 2021; and (xii) the pro forma number of fully diluted outstanding shares of Company common stock.

34.     With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price of Analysis of SWN*, the Proxy Statement fails to disclose: (i) the basis for multiplying the estimated NTM EBITDA for the Company by illustrative EV/NTM EBITDA multiples of 4.5x, 5.0x, and 5.5x; (ii) the net debt of the Company as of December 31 of each of 2021, 2022, and 2023; (iii) the number of fully diluted outstanding shares of Company common stock as of December 31 of each of 2021, 2022, and 2023; (iv) the inputs and assumptions underlying the illustrative discount rate of 8.60%.

35.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision

regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

38.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Goldman Sachs and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).   The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40.      Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

41.      The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42.      Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.      The Individual Defendants acted as controlling persons of Southwestern Energy within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Southwestern Energy, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements

contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Southwestern Energy, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Southwestern Energy, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 7, 2021          **MELWANI & CHAN LLP**

By:  /s *Gloria Kui Melwani*
      Gloria Kui Melwani (GM5661)
      1180 Avenue of the Americas, 8th Fl.
      New York, NY 10036
      Telephone: (212) 382-4620
      Email: gloria@melwanichan.com

      *Attorneys for Plaintiff*